UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
_____

Milan C. Dean,

        Plaintiff,

v.                          **MEMORANDUM AND ORDER**
                                 Civil File No. 04-3314 (MJD/AJB)

Minneapolis Police Department
and Chief William P. McManus,

        Defendants.
_____

Milan C. Dean, pro se.

Michael J. Rugani, Assistant City Attorney for the City of Minneapolis, Counsel for Defendants.

---

## I. INTRODUCTION

This matter is before the Court on Defendants' Motion for Summary Judgment [Docket No. 18]. The Court heard oral arguments on November 30, 2005.

## II. FACTUAL BACKGROUND

For the purposes of summary judgment, the Court views the facts in the light most favorable to the non-moving party.

On June 24, 2004, Plaintiff, Milan C. Dean, returned home from vacation to find that most of his personal property had been removed from his apartment.

1

(Rugani Aff. Ex. A ¶ 4.) Dean immediately called the Minneapolis Police Department to report the burglary. An officer was sent to Dean's residence and a report of the incident was filed. According to Dean, he immediately suspected an acquaintance, Ms. Kimberly Houtari. Houtari's mother lived in Dean's building, and she had previously been banned from the property. Dean suspected Houtari because she left behind blonde hair, a note, and fingerprints. Dean told the officer he went to McDonald's with Houtari before leaving for vacation and that she must have stolen his keys from his jacket pocket at that time. (Rugani Aff. Ex. D at 6.) The report notes no sign of forced entry, and Dean states that a neighbor let him into his building when he realized that his keys were not in his possession. (Id. at 2, 6.) The door to Dean's apartment was unlocked when he arrived home.

Sergeant Chris Karakostas of the Minneapolis Police Department was assigned to investigate Dean's complaint. (Id. at 7.) After investigating the matter, Karakostas made the determination that there was no evidence or information that implied Houtari was involved in the burglary and the case was closed. (Id.) After the case was closed, Dean contacted Lieutenant Dana Smyser of the Minneapolis Police Department several times to have the matter reopened. (Id. at 8; Smyser Aff. ¶ 4.) Smyser discussed claims of additional evidence with Dean. During one conversation, Dean became upset and hung up on Smyser. (Id. at ¶ 5.) Smyser informed Karkostas of the possibility of additional evidence regarding the buglary. (Id. at ¶ 6.)

On July 4, 2004, Dean encountered Hourtari outside the Salvation Army. Dean saw his keys on Hourtari's key ring so he took the keys out of the ignition in Houtari's car and went inside to call for police assistance. (Dean Depo. at 11.)  An officer arrived, determined that there was no warrant for Houtari's arrest, and informed Dean that he would not detain Houtari.  At some point during this incident, Dean broke the windows of the taxi driven by Houtari with a wooden board.  He was charged with felony property damage for this incident, but the charges were later dismissed. (Id.)

The Minneapolis Police Department interviewed Houtari on July 27, 2004. Houtari admitted that she had taken Dean's property, however, she claimed that Dean had given her his keys and permission to remove his belongings because he anticipated being evicted. (Rugani Aff. Ex. D at 9.)  Dean, still living in the same apartment over a year later, disputes Houtari's version of the incident.

Karakostas presented the case to the Hennepin County Attorney's Office for consideration of charging.  After considering the case, the Hennepin County Attorney denied charging the matter related to the burglary based on a determination that: (1) it would be difficult to prove that Dean had not given Houtari permission to enter his apartment; (2) Dean's violent conduct detracted from his credibility as a witness; and (3) the facts at issue were unclear and would be difficult to establish beyond a reasonable doubt. (Rugani Aff. Ex. E.)

Dean filed this lawsuit against the Minneapolis Police Department and Chief William P. McManus.  Dean does not make a claim against the individual police officers involved in the burglary investigation, nor does he allege any claims against the Hennepin County District Attorney.  Liberally construed, the Complaint alleges civil rights violations under 42 U.S.C. §§ 1983 and 1981, and negligence by Defendants for their failure to adequately investigate the alleged wrong.

## III.   DISCUSSION

The Court would like to commend Dean, a pro se litigant, for his determination to right the injustice he perceived using the court system.  By this action, Dean marshaled the attention of the Minneapolis Police Department, the City of Minneapolis, and this Court.  With commendable zeal and energy, accompanied by an intelligent oral argument, Dean addressed potentially biased actions of the City of Minneapolis, an effort for which the Court is proud.

### A.   Summary Judgment Standard

Summary judgment is appropriate if, viewing all facts in the light most favorable to the non-moving party, there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The party seeking summary judgment bears the burden of showing that there is no disputed issue of material fact.  Celotex, 477 U.S. at 323.  But a nonmoving party may not

4

"rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." Krenik v. County of LeSueur, 47 F.3d 953, 957 (8th Cir. 1995).

In considering a motion for summary judgment, a court's function is not to weigh the evidence or determine the truth of the matter; rather, it is to determine whether there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). At the summary judgment stage, credibility determinations, weighing of evidence, and the drawing of legitimate inferences from the facts are functions for a jury, not a court. Anderson, 477 U.S. at 255. The evidence and all justifiable inferences are to be drawn in favor of the nonmoving party. Id. The issue of whether summary judgment on qualified immunity grounds from a particular set of facts is a question of law. Greiner v. City of Champlin, 27 F.3d 1346, 1352 (8th Cir. 1994). "But if there is a genuine dispute concerning predicate facts material to the qualified immunity issue, there can be no summary judgment." Id.

### B.  Whether All Claims Against McManus Should Be Dismissed

Defendants argue that Dean fails to state a claim against McManus because in his Complaint, Dean does not allege any act of wrongdoing attributable to McManus. They assert that Dean makes no allegations that McManus was involved in the investigation of Dean's complaint or that McManus was negligent or derelict in discharging his duties.

5

Defendants construe Dean's deposition testimony that his claim is only against the Minneapolis Police Department[1] to affirm that Dean's claims are not against McManus.  Accordingly, Defendants ask the Court to dismiss all causes of action against McManus.

Public servants may be sued under section 1983 in either their official capacity, their individual capacity, or both. <u>Johnson v. Outboard Marine Corp.</u>, 172 F.3d 531, 535 (8th Cir. 1999).  Personal-capacity suits seek to impose personal liability upon a government official for actions he or she takes under color of state law. <u>Kentucky v. Graham</u>, 473 U.S. 159, 166 (1989).  In order to sue a public official in his or her individual capacity, a plaintiff must expressly and unambiguously state so in the pleadings, otherwise it will be assumed that the defendant is sued only in his or her official capacity. <u>Id.</u>

A supervisor, such as McManus, may be held liable under section 1983 if he directly participated in the constitutional violation or if his failure to train or supervise the offending actor caused the deprivation. <u>Tilson v. Forrest City Police Dept.</u>, 28 F.3d 802, 806 (8th Cir. 1994).  The Court has an obligation to construe pro se plaintiffs' pleadings liberally. <u>In re Cook</u>, 928 F. 2d 262, 263 (8th Cir. 1991).  However, it must balance that obligation with defendants' right to receive proper notice of complaints against them.  Because section 1983 liability exposes

---

[1] Claims against the Minneapolis Police are construed to be claims against the City of Minneapolis because the Minneapolis Police Department is not an entity capable of being sued.

6

public servants to civil liability and damages, the Eighth Circuit has determined that only an express statement that individuals are being sued in their individual capacity will result in proper notice to the defendants. Nix v. Norman, 879 F.2d 429, 431 (8th Cir. 1989).

Official-capacity suits, in contrast, "generally represent only another way of pleading an action against an entity of which an officer is an agent." Monell v. New York City Dept. of Social Services, 436 U.S. 658, 690 (1978). Accordingly, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. Graham, 473 U.S. at 166.

In this case, the Complaint does not indicate whether relief is sought against McManus individually or in his official capacity. Further, the Complaint does not allege any specific conduct by McManus and, except for in the caption, does not mention him by name. Accordingly, the Court assumes that McManus is named in his official capacity which, in turn, is construed as a suit against the City of Minneapolis ("the City"). Because Dean has not made any allegations against McManus individually, and the remainder of the allegations are construed as against the City, all claims against McManus are dismissed.

### C. Dean's Constitutional Claims

Liberally construed, Dean's Complaint claims deprivation of federal constitutional and civil rights under 42 U.S.C. § 1983 and denial of Fourteenth Amendment equal protection, pursuant to 42 U.S.C. § 1981.

7

### 1. Liability Under Section 1983

#### a. Claims Against Individual Officers

In this case, because Dean does not name individual police officers as defendants, the Court does not entertain claims against them as individuals. It is therefore unnecessary to reach the issue of qualified immunity for individual officers.

#### b. Claims Against the City

There are two ways in which section 1983 imposes liability on a city: the city can be liable for its failure to train its employees, or it can be liable based on a municipal custom or policy theory, dictated by Monell v. Department of Social Services, 436 U.S. 658 (1978).

##### i. Failure to Train Under Canton

A plaintiff has a limited cause of action against a municipal corporation for its failure to train its employees, where that failure reflects "deliberate indifference" to the constitutional rights of its inhabitants and proximately causes a plaintiff's constitutional deprivation. City of Canton, Ohio v. Harris, 489 U.S. 378, 392 (1989).

The establishment of an individual officer's personal liability is not necessarily a prerequisite for the imposition of municipal liability. Szabla v. City of Brooklyn Park, MN, No. 04-2538, 2005 WL 3209151, at *5 (8th Cir. Dec. 1, 2005). However, when the municipality is sued on the theory that it is

responsible for the actions of the individual defendants by its failure to train or supervise them, and there is a determination that the individual defendants committed no constitutional violation, the municipality is not liable. Olineer v. Lovson, 134 F.3d 1362 (8th Cir. 1998); Schulz v. Long, 44 F.3d 643, 650 (8th Cir. 1995).

When bringing a section 1983 claim a plaintiff must establish (1) a deprivation of a right secured by the Constitution or laws of the United States and (2) that the deprivation was committed under color of state law. Lugar v. Edmondson Oil Co., 457 U.S. 922, 931 (1982). A law enforcement officer can be liable under section 1983 when by his inaction he fails to perform a statutorily imposed duty to enforce the laws equally and fairly, and thereby denies equal protection.

In this case, Defendants argue that because city liability based on failure to train or supervise is predicated on an initial finding that individual officers committed a constitutional violation, and the record is devoid of any evidence of a constitutional violation, such claims must be dismissed. Even viewing the evidence in the light most favorable to the Plaintiff, Defendants contend that the officers' actions were reasonable because they were acting according to police procedure and it was the decision of the Hennepin County Attorney's Office not to press charges.

9

In his Letter Opposing Summary Judgment, Dean asserts that "[t]he Mpls. Police dept. purposely turn over to the county's attorney office a false report so that no charges would be brought." (Dean Opp. Mot. Summ. J. at 2.) Dean also testified during depositions that the police reports were "a false lie." (Dean Dep. at 19.) In another letter written to McManus, Dean alleges that one week after the reported burglary he had yet to speak with an investigator. (Dean Ex. L.) However, Dean admitted during his deposition that an officer did respond to his call, and a police report was filed. (Dean Dep. at 9.) Dean has put nothing in the record to indicate the manner in which the officers may have failed to investigate his claims. Dean fails to point to any piece of evidence he gave to the police that was not included in the report. He appears to believe that the officers valued Houtari's word over his own. This assertion alone, even if true, does not raise a factual dispute. Accordingly, the City is entitled to summary judgment for any claims under a failure to train theory because Dean failed to present adequate evidence of a constitutional violation by the individual officers.

### ii.   Policy or Practice Under Monell

The Complaint alleges that the Minneapolis Police Department has a practice of racism which resulted in the violation of Dean's constitutional right to equal protection. (Compl. ¶¶ 3, 5.)

A claim against a governmental entity under 42 U.S.C. § 1983 is examined according to the principles set forth in Monell, 436 U.S. 658. Under section 1983,

a municipality or other political subdivision is not vicariously liable for the unconstitutional acts of its employees. Id. at 694.  Rather, a municipality may be liable only if the plaintiff can show that an official policy of the government is "the moving force of the constitutional violation." Id. at 690-691. To bring a claim under section 1983, a plaintiff must show: (1) the municipal corporation had a policy, practice or custom (2) of violating individuals' federally protected rights and (3) that the policy proximately caused the plaintiff's alleged damages. Id.

The Supreme Court, in interpreting Monell, held that a single incident is ordinarily insufficient to impose liability:

> Proof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker

City of Oklahoma v. Tuttle, 471 U.S. 808, 824 (1985).

A municipality's policy is not unconstitutional if it might permit unconstitutional conduct in some circumstances; it is unconstitutional only if it requires its persons to act unconstitutionally. See Handle v. City of Little Rock, 772 F. Supp. 434, 438 (E.D. Ark. 1991).  If the evidence lacks a pattern of unconstitutional misconduct, this effectively ends a court's inquiry. See Thelma D. ex rel. Delores A. v. Bd. Of Educ., 934 F.2d 929, 933 (8th Cir. 1991).

The Eighth Circuit does not use the terms "policy" and "custom" interchangeably. Mettler, 165 F.3d at 1204.  "[A] 'policy' is an official policy, a

deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." Id. at 1204.  In turn, to establish the existence of a "municipal custom," a plaintiff must demonstrate the following:

>   (1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
>
>   (2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
>
>   (3) The plaintiff was injured by acts pursuant to the governmental entity's custom i.e. that the custom was the moving force behind the constitutional violation.

Delores, 934 F.2d at 932-33.

Because Dean does not point to any evidence of a policy requiring Minneapolis police officers to act unconstitutionally, the Court concludes he intends to invoke the municipal custom theory set forth in Delores. Id.  Dean has not alleged adequate information to satisfy the three-pronged Delores test.  First, there is no evidence in the record that other citizens have complained about failure to charge crimes based on the race of the victim and suspect.  Construing the Complaint liberally, Dean alleges that the police department has a "practice of racism." (Compl. ¶ 5.)  This assertion alone, which does not give any specific facts, is not sufficient to withstand a motion for summary judgment.  Second, Dean has not set forth allegations showing that policymaking officials were on

notice as required by prong two. Finally, even if Dean could show the City had received complaints of racism and failed to act upon them, summary judgment is still appropriate because Dean failed to plead causation required by <u>Delores</u>. Specifically, Dean has not established a city custom that is the moving force behind a constitutional violation because Dean has not produced any evidence identifying deficiencies in training or discipline of the officers. Absent alleged inadequacies, Dean cannot show an affirmative link between City practices and the conduct of the officers. Because Dean has not satisfied the requirements set forth in <u>Delores</u>, the City is entitled to summary judgment for section 1983 claims under a pattern or practice theory of liability.

### 2.     Liability Under Section 1981

Dean's Complaint may be read to allege a denial of equal protection under 42 U.S.C. § 1981 by treating Dean, an African American, less favorably than Caucasian complainants.

Section 1981 proscribes intentional discrimination based on race. <u>General Bldg. Contractors Ass'n v. Pennsylvania</u>, 458 U.S. 375, 391 (1982). In order to state a prima facie claim under section 1981, Dean must show that (1) he is a member of a racial minority; (2) the City intentionally discriminated against him on the basis of his race; and (3) the discrimination was directed toward one or more activities protected by section 1981. See <u>Williams v. Lindenwood Univ.</u>, 288

F.3d 349, 355 (8th Cir. 2002); <u>Clardy v. City of St. Paul</u>, No. 01-1275, 2003 WL 21805203, at *10 (D. Minn. Aug. 4, 2003).

In this case, there is no dispute that Dean is a racial minority. However, he has failed to address or establish the remaining two elements of a prima facie case under section 1981.

Defendants argue that Dean's complaint was investigated by procedure and in the same manner and to the same extent as any other such complaint taken by the Minneapolis Police Department would be investigated. Dean offers no evidence that the officers neglected to put in their reports. He simply asserts that the suspect was not criminally charged based on the fact that Dean is black and the suspect is white. This assertion alone, without evidence, cannot survive a motion for summary judgment. The City is therefore entitled to summary judgment on Dean's section 1981 claims.

### D.  State Tort Claims

Dean asserts a state law claim of negligence against Defendants.

#### 1.  Negligence

When bringing a negligence claim, a plaintiff must prove:

> (1) the defendant has a legal duty to the plaintiff to take some action;
> (2) there was a breach of that duty;
> (3) the breach of the duty was the proximate cause of the harm to the plaintiff; and
> (4) damage.

14

Gilbertson v. Leininger, 599 N.W.2d 127, 130 (Minn. 1999).  The duty of police officers to protect the public is a public duty, not a duty to individuals.  See Cracraft v. St. Louis Park, 279 N.W.2d 801, 804 (Minn. 1979).  Under the public duty doctrine, a special duty is created between a municipality and the plaintiff when:

> 1. the municipality had actual knowledge of a dangerous condition;
> 2. the injured party reasonably relied on representations and conduct of the municipality or its agents so as to forego other ways of protecting himself;
> 3. the duty of care was created by an ordinance or statute setting forth mandatory acts for protection of a particular class; and
> 4. the municipality did not exercise due care to avoid increasing the risk of harm.

Dahlheimer v. City of Dayton, 441 N.W.2d 534, 538 (Minn. Ct. App. 1989).

In this case, the City is entitled to summary judgment on the negligence claims because the City had no statutory duty of care.  Aside from his race, Dean plead nothing to distinguish himself from the average citizen complaining of a burglary.  Absent any evidence of an obligation owed to Dean individually, no special duty can be inferred.  Because the Court concludes that no special duty existed, there can be no breach of that duty and Dean's negligence claims must be dismissed.

Having determined that the City is entitled to summary judgment for any negligence claims against individual officers, it is unnecessary to reach the issue of official immunity.  However, even if Dean was able to establish that the City

15

breached a special duty owed to him, Dean's negligence claims would still be dismissed because the City is entitled to vicarious official immunity.

### 2.     Vicarious Official Immunity

If an officer is immune from liability, the officer's employer is also entitled to vicarious official immunity for negligence.  Vicarious official immunity protects a governmental entity from suit based on the acts of an employee who is entitled to official immunity. See Wiederholt v. City of Minneapolis, 581 N.W.2d 312, 316 (Minn. 1998).  The Minnesota Supreme Court has concluded that "it would be anomalous" to impose liability on the government employer for the very same acts for which the employee receives immunity. Id.  Thus, a municipality cannot be liable for the acts of its employees if those employees are protected by official immunity. Watson, 553 N.W.2d at 414.

Minnesota law recognizes that police officers are generally discretionary officials entitled to official immunity from state law claims.  Dokmun v. County of Hennepin, 637 N.W.2d 286, 296 (Minn. Ct. App. 2001) (citing Johnson v. Morris, 453 N.W.2d 31, 41 (Minn. 1990)).  The doctrine of official immunity bars liability unless a plaintiff proves that a police officer is guilty of a willful or malicious wrong. Rico v. State, 472 N.W.2d 100, 107 (Minn. 1991).

In this case, the Defendants actions while applying the facts uncovered during an investigation to investigative procedure are most aptly deemed discretionary.  Dean has not put any allegations of willful or malicious conduct

into the record. Accordingly, the individual officers are shielded by official immunity for all state law tort claims.

Because any officers named as defendants would be entitled to official immunity as a matter of law, the City of Minneapolis is similarly entitled to the protection of vicarious official immunity for negligence claims based on the actions of individual officers.

**3. Statutory Immunity**

The Defendants argue that even if they are not entitled to vicarious official immunity, summary judgment is still appropriate because Defendants are protected by statutory immunity. Under the Minnesota Tort Claims Act, a political subdivision is not liable for its torts and those of its officers, employees and agents acting within the scope of their employment, "for any claim based upon the performance or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused." Minn. Stat. § 466.03, Subd. 6. Decisions regarding the scope of training required for police officers are discretionary decisions. Maras v. City of Brainerd, 502 N.W.2d 69, 78 (Minn. Ct. App. 1993).

Much like the official immunity analysis above, decisions at the heart of either negligence claim, whether they involve supervision of the officers, or the training and education of the officers, are discretionary decisions and therefore protected by statutory immunity.

Accordingly, based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment [Docket No. 18] is **GRANTED.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: December 11, 2005                    s / Michael J. Davis
                                            Judge Michael J. Davis
                                            United States District Court